# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAURA LEA WARDEN,** *et al.,* : | |
| **Plaintiffs,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 19-CV-5493** |
| : | |
| **WOODS SERVICES,** *et al.,* : | |
| **Defendants.** : | |

## MEMORANDUM

**SCHILLER, J.**                                                                **DECEMBER 10, 2019**

Plaintiff Laura Lea Warden has filed a civil action using the Court's preprinted forms for use by unrepresented litigants. (ECF No. 2 at 1-6.) Part of the filing is an additional handwritten Complaint with attached exhibits and documents (*id.* at 7-48), and Warden has also attached an additional preprinted form Complaint for use by litigants seeking to file claims of employment discrimination. (*Id.* at 49-58.) Named as Defendants are Warden's former employer, Woods Services; Najala Thomas, Cia Smith, Cynde E. Roy, Sue Campbell, Monica Moser, Beverly Hock, Patricia Swain, Erin Drummond, Mary Derry, John Doe #1 and John Doe #2, all of whom apparently work for Woods Services;[1] and Ashley Dantz, an employee of Dunn Corporate Resources. Warden seeks to proceed in this case without the prepayment of fees. For the reasons that follow, the Court grants Warden leave to proceed *in forma pauperis.* Warden's claim under the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 623, will be dismissed without prejudice and her state law claims will be dismissed with prejudice. Warden

---

[1] Although listed in the caption, the Complaint contains no substantive allegations against Beverly Hock. While Warden lists as a Defendant "John Doe #2," she makes factual allegations concerning only one unknown actor.

will be granted leave to file an amended complaint if she is able to cure all of the defects the Court has identified in her ADEA claim.

I.   FACTUAL ALLEGATIONS

Warder asserts that on November 16, 2017, Defendant Campbell, a residential director at Woods Services, and another unidentified individual listed as Defendant John Doe #1, suspended her from her job based on an incident that occurred on November 12, 2017. (ECF No. 2 at 4, 15, 22.) Defendant Thomas allegedly reported to other employees that she heard Warden hit a client in the head.[2] (*Id.* at 4.) Warden claims she was unaware that she did anything that violated company policies. (*Id.*) Warden also alleges she was suspended by Defendant Roy, and terminated on November 29, 2017 by Defendant Moser, who is the Director of Woods Services. (*Id.* at 16.) She met with Defendant Derry, a human resources official, on December 5, 2017. (*Id.*) She was not given a reprimand or reason for her termination, until she later met with Defendant Drummond on December 11. (*Id.* at 8.) She was not permitted representation or to call any witness, and could not take notes or record the meeting. (*Id.* at 8, 17.) At that meeting she was told that her termination was due to her having hit and been verbally abusive to a client. (*Id.* at 8.) She asserts there was no evidence or documents supporting that charge. (*Id.*) She also asserts that she was told by others that Campbell intended to reinstate her, but was overruled by Defendant Swain, a Woods Services manager. (*Id.* at 16.)

Warden claims that she had been employed by Woods Services from March 2008 without any infractions "although her employment had been threatened many times over the last 5 years for incidents that were not within her control." (*Id.* at 10.) She alleges she was treated

---

[2] Elsewhere in the Complaint, Warden asserts that the clients of Woods Services are physically and mentally disabled individuals. (ECF No. 2 at 14.)

differently from other employees over that five-year period, in that her employer would not permit her to be driven to the job site; rather she had to either drive herself to her job or be dropped off at the street and walk to the front door. (*Id.* at 10-11.) She claims her dismissal was due to her age. (*Id.* at 11.) She also claims that other employees were not disciplined for hitting clients. (*Id.* at 19.)

Warden asserts that she learned through the discovery process associated with her claim for unemployment benefits that Defendant Ashley Dantz of Dunn Corporate Resources responded to inquiries from the Pennsylvania Department of Labor and Industry on behalf of Woods Services, falsely reporting that Defendant Moser conducted an investigation of the incident in order to deceive the agency into denying Warden's claim for benefits. (*Id.* at 18.) She was denied benefits on March 12, 2018. (*Id.* at 20.) She appealed that decision and a hearing was held on June 29, 2018, resulting in a decision overturning the denial of benefits that was issued on July 25, 2018. (*Id.*)

## II. STANDARD OF REVIEW

Because the Court has granted Warden leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* "[T]he plausibility paradigm announced in [*Bell Atl. Corp. v.*] *Twombly*[, 550 U.S. 544 (2007),] applies with equal force to

3

analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). As Warden is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Federal Law Claims

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). To establish a *prima facie* case of age discrimination, a plaintiff must allege that "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). A plaintiff must allege these same elements in order to set forth a plausible claim under the Pennsylvania Human Relations Act. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts"). Although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, she still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotations omitted).

Warden has failed to state a plausible ADEA claim. While she checked the box labeled "Age Discrimination in Employment Act" on the preprinted form Complaint, she does not actually allege that she suffered an adverse employment action because of her age. In fact, the

form is mostly blank, save for an entry reading "unlawfully terminated," and another entry reading "see federal civil action complaint." (ECF No. 2 at 51.) In her handwritten Complaint, which attempts to assert a common law wrongful termination claim, she asserts only that, due to having been fired over the alleged incident of hitting the mentally impaired client, she has been "denied a normal lively hood [sic] as due to her age she was a hard time just to find employment yet to have any retirement income." (*Id.* at 11.) This does not state a plausible ADEA violation against any named Defendant. Furthermore, even if it did, the ADEA claim brought against Warden's individual coworkers and supervisors is not plausible because they were not Warden's employer. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) (holding that "the ADEA limits civil liability to the employer" and therefore individual supervisors are "not . . . proper defendant[s]"); *Wathen v. General Electric Co.*, 115, F.3d 400, 404 n.6, 405 (6th Cir. 1997) (Title VII does not provide for individual liability); *Smith v. Allstate Ins. Co.*, 195 F. App'x 389, 397 n.7 (6th Cir. 2006) (affirming dismissal of ADEA claims against individual supervisor because individual is not "employer").

Finally, prior to filing a lawsuit under the ADEA, a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue letter before filing a complaint in federal court. *See* 29 U.S.C. § 623(a); *see also Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 109 (3d Cir. 2014) ("Before an employee may file suit under the ADEA, however, a plaintiff is required to exhaust administrative remedies by filing a charge of discrimination with the EEOC."). The Court notes that Warden left blank the portions of her form ADEA Complaint asking if she filed a charge with the EEOC or PHRC, and whether she received a Notice of Right to Sue Letter. Neither did she attach a copy of such a Letter to her Complaint as instructed in the form. (ECF

No. 2 at 52.) She did, however, check the box asking if "fewer than 60 days have passed" since the filing of an age discrimination charge with the EEOC.

As the United States Court of Appeals for the Third Circuit has explained, "[t]he purpose of requiring an aggrieved party to first resort to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). Thus, "suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 497 (W.D. Pa. 2007) (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir.1999)). Ultimately, "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . .'" *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz*, 541 F.2d at 398-99).

An administrative charge of employment discrimination must within 300 days after the alleged discrimination. *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480 (3d Cir. 1997) (citing 42 U.S.C. § 2000e–5(e)(1)). Warden claims she was terminated — and aware she was terminated — on November 29, 2017, meaning that the 300-day limitations period began to run on that date. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury."). Therefore, she was required to file her claim no later than September 25, 2018.

The time limitations applicable to employment discrimination cases such as this are not, however, jurisdictional and they are subject to equitable tolling. *Oshiver*, 38 F.3d at 1387 (citations omitted). The Third Circuit "has instructed that there are three principal, though not

exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.*[3]

Because Warden did not file a timely charge with the EEOC, the ADEA claim is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for this additional reason. Nonetheless, out of an abundance of caution, the Court will dismiss the ADEA claim without prejudice and with leave granted to Warden to file an amended complaint to attempt to cure the defects the Court has identified. If she filed a timely charge with the EEOC or PHRC, Warden should state so in her amended pleading and attach a copy of the resulting Notice of Right to Sue Letter.

B.      **State Law Claims**

Pennsylvania is an "at-will" employment state, meaning that an employee "may be terminated at any time, for any reason or for no reason." *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). In Pennsylvania,

> the presumption of all non-contractual employment relations is that it is at-will and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth.

---

[3] The Court notes that Warden has appended to her Complaint a "Return of Document" form from the Bucks County Court of Common Pleas, date stamped November 19, 2018. That document reflects that Warden attempted to file a writ of summons *in forma pauperis* in that court, but the document was not accepted for filing since it was not accompanied by a complaint. (ECF No. 2 at 58.) While her filing in the Court of Common Pleas might be argued to be an assertion of Warden's rights in an incorrect forum, it cannot be deemed timely under the 300-day rule since she did not attempt the filing until approximately two months after the statute of limitations period expired.

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). "[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." *Id.* (citing *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998)). The termination of an at-will employment violates Commonwealth public policy "only in the clearest of cases." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). In addition, terminated employees may invoke the public policy exception only in the absence of any applicable statutory remedy. *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir. 1983); *Weaver*, 975 A.2d at 568, n.10. Courts have held that because the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951 et seq., provides a statutory remedy in a wrongful discharge action based on theories such as age discrimination, the public policy exception is unavailable. *See Sola v. Lafayette College*, 804 F.2d 40, 42 (3d Cir. 1986) (holding that gender discrimination claim covered by Pennsylvania Human Relations Act could not provide public policy exception); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989) (holding that "the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination."). Although Pennsylvania Supreme Court in *Clay* addressed only sex discrimination, its reasoning clearly applies to age discrimination as well. *Accord Timm v. Manor Care, Inc.*, Civ. A. No. , 2006 WL 6451234, at *5 (W.D. Pa. Mar. 20, 2006) (applying *Clay* to age discrimination claim). Therefore, the Court predicts that if it were to decide the issue, the Supreme Court of Pennsylvania would rule that the PHRA provides the exclusive remedy for age discrimination claims, and that an age discrimination claim based on

Pennsylvania's public policy exception to the at-will employment doctrine is barred by the PHRA. Thus, Warden's wrongful termination claims are not plausible.[4]

IV. CONCLUSION

Warden's state law wrongful termination claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because she was an at-will employee when she was terminated. Her ADEA claim will be dismissed without prejudice and with leave granted to file an amended complaint if she is able to cure all of the defects in the claim that the Court has identified. Her motion for appointment of counsel is denied without prejudice at this time. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.

**BY THE COURT:**

**Berle M. Schiller, J.**

---

[4] Warden's wrongful termination claims against Defendants Najala Thomas, Cia Smith, Cynde E. Roy, Sue Campbell, Monica Moser, Beverly Hock, Patricia Swain, Erin Drummond and Mary Derry, all of whom apparently work for Woods Services; Ashley Dantz, an employee of Dunn Corporate Resources; and two John Does are furthermore implausible since none of these Defendants are alleged to have been her employer.